**Marvin HERREN and Wilma Herren, Appellants,**

v.

**Charles BONHAM, Appellee.**

No. 72987.

Supreme Court of Oklahoma.

Jan. 28, 1992.

Rehearing Denied March 17, 1992.

Boettcher and Ryan by Thomas S. Evans, Philip D. Ryan, Rick W. Bisher, Roger B. Hale, Ponca City, for appellants.

Edmonds, Cole, Hargrave & Givens by Brian Husted, Oklahoma City, for appellee.

HODGES, Vice Chief Justice.

Marvin and Wilma Herren (tenants) rented a single-family house from Charles Bonham (landlord) late in April, 1986. A row of small tree stumps lined an area near a fence in the backyard of the house. At the time the tenants moved in, the yard had been mowed. But it is unclear whether the mowing included that portion of the yard with the stumps. The landlord never mentioned the stumps to the tenants.

By early June, the grass had grown rather high. Wilma Herren began mowing the grass in her bare feet. She was pulling the mower towards her when she tripped backwards over one of the stumps. Her right foot slipped under the mower which completely severed her big toe.

The tenants sued the landlord alleging he was negligent in not warning them of the stumps. The landlord moved for summary judgment arguing that he owed no duty to warn the tenants of the stumps as a matter of law. The trial court granted the landlord's motion.

In support of its reversal of summary judgment, the Court of Appeals cited *Wetsel v. Independent School District,* 670 P.2d 986 (Okla.1983). In *Wetsel,* a kindergarten student was accidently burned during a teacher's class demonstration utilizing a deep-fat fryer. The legal issue was what degree of care was owed the student.

In its analysis of the duty of ordinary care to be afforded a student, the *Wetsel* court observed:

> The degree of supervision that is required by law over kindergarten students necessarily varies with the activities in which they are engaged, i.e. resting, drawing, playing, listening to stories or watching a cooking demonstration. The standard of care imposable upon school

authorities does of necessity depend on the situational setting. *It is not fixed by law.*

*Id.* at 991 (footnote omitted). Thus, *Wetsel* held that in such a situation the legal standard of care is not fixed but remains shifting with the circumstances and the "absence of care that is *due* tenders a controversy for jury resolution." *Id.*

Relying on *Wetsel,* the Court of Appeals in this matter apparently reasoned that the landlord's duty was not fixed and that a jury must determine what duty was owed under the circumstances. However, this case does not involve a shifting degree of care. It is controlled by the law of premise liability; specifically, the *fixed* legal duty of a landlord to warn a tenant of certain hazards present on the property at the time of leasing.

This common law duty [1] to disclose dangerous conditions on leased property is stated in section 17.1 of the Restatement (Second) of Property which provides:

> (1) A landlord who conceals or fails to disclose to his tenant any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the leased property and which exists when the tenant takes possession, is subject to liability to the tenant and others upon the leased property with the consent of the tenant or his subtenant for physical harm caused by the condition after the tenant has taken possession, if:
>
> (a) the tenant does not know or have reason to know of the condition or the risk involved; and
>
> (b) the landlord knows or has reason to know of the condition, realizes or should realize the risk involved, and has reason to expect that the tenant will not discover the condition or realize the risk.

---

1. It is this common law duty which controls this decision, not, as tenants urge, section 118(A)(1) of the Oklahoma Residential Landlord and Tenant Act. *See* Okla. Stat. tit. 41 §§ 101–136 (1981 & Supp.1990). That provision, by its own terms, exempts a "single-family residence" from the requirement that a landlord "keep all common areas of his building, grounds, facilities and appurtenances in a clean, safe and sanitary condition." The leased property in this matter was a single-family residence. There were no common areas to be maintained.

This part of section 17.1 states the general duty of a landlord to warn of dangerous conditions. However, the section goes on to provide:

> (2) If the landlord actively conceals the condition, the liability stated above continues until the tenant discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the tenant has had reasonable opportunity to discover the condition and to take those precautions.

Comment f to section 17.1 notes that "[t]he liability of the landlord under this section is based on his concealment or failure to disclose. Therefore, the landlord remains liable until the tenant has had a reasonable opportunity to discover and take precautions, except where the landlord actively conceals."

There was no allegation that the landlord in this matter actively concealed the presence of the stumps from the tenants. The question then becomes whether the tenants, by the time of the injury, had a reasonable opportunity to discover the stumps and take precautions against them. If they had such an opportunity, it does not matter whether the condition presented an "unreasonable risk of harm" or whether the landlord knew of its presence at the time of leasing.

Transcripts of depositions were attached to the brief in support of landlord's motion for summary judgment. Tenants' testimony demonstrated that they moved into the property in late April. Mr. Herren stated that there had been a lot of moisture that spring and the grass had "shot right up." He also stated that he had not mowed parts of the yard, including the part of the yard with the stumps, until the accident in early June.

Although it is not clear whether that portion of the yard was mowed at the time of leasing, tenants had five weeks in which to discover the stumps. Their presence would have been easily discoverable during a prudent inspection of the tall grass prior to mowing. Tenants could reasonably have been expected to discover such a condition without a warning from the landlord. The trial court was correct in granting the landlord's motion for summary judgment.

COURT OF APPEALS OPINION VACATED; JUDGMENT OF TRIAL COURT AFFIRMED.

LAVENDER, DOOLIN, ALMA WILSON and SUMMERS, JJ., concur.

OPALA, C.J., concurs in judgment.

KAUGER, J., concurs in part, dissents in part.

SIMMS, J., dissents.

HARGRAVE, J., disqualified.